## Collier Development Company Inc. v. Jeffco Construction Company

*Kevin J. Fiore,* for plaintiff.

*Edward A. Yurcon* and *Elizabeth E. Deemer,* for defendant ITT Hartford Insurance Co.

*Thomas J. Schuchert,* for defendant Jeffco Construction Co.

FRIEDMAN, *J.,* April 13, 1995—

### INTRODUCTION

Defendant Hartford Fire Insurance Company, incorrectly identified as ITT Hartford Insurance Company, has filed "preliminary objections raising questions of fact" in response to plaintiff's complaint. The other defendant, Jeffco Construction Company, has filed its answer and new matter.

Hartford, in its first preliminary objection, contends that plaintiff is obligated by contract to submit all but a small portion of its claims to arbitration. Hartford's theory is that plaintiff, a subcontractor, is bound by *all* the terms agreed to by the general contractor, including the agreement to arbitrate, simply because the "general contract" was, allegedly, incorporated by reference into the "subcontract."

In addition, Hartford demurs to Count II which seeks punitive and compensatory damages under Pennsylvania's insurance bad faith statute found at 42 Pa.C.S. §8371:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and fees against the insurer."

Hartford contends that a surety bond (such as the one at issue here, which is designed to protect the owner of a construction project by ensuring payment of subcontractors and suppliers) is not covered by section 8371. One reason for this is said to be that a surety has a right of indemnification against the general contractor who purchased the bond for the owner's benefit. Hartford also points out that the purpose of section 8371 is to punish insurers who wrongfully deny coverage to their *insureds*. In other words, under Hartford's analysis, section 8371 does not provide a bad faith claim

in favor of those injured by an *insured's* conduct. Therefore, it should not be interpreted as providing a bad faith claim in favor of subcontractors such as plaintiff who are simply third party beneficiaries of the surety bond issued by Hartford to protect the owner and paid for by the general contractor. Hartford's position would seem to be that the societal goals achieved by insurance policies are too different from those achieved by surety bonds to allow the insurance law of bad faith to apply to the conduct of the issuers of surety bonds.

Lastly, Hartford demurs to Count III, a claim under the Contractor and Subcontractor Payment Act, 73 P.S. §501 et seq., on the grounds that this Act was only approved on February 17, 1994, is effective as of 60 days thereafter, and applies only "to construction contracts executed on or after the effective date." Plaintiff agrees that Hartford is correct on this point, so there will be no further discussion of this issue.

After preliminary oral argument, the parties agreed to submit this case for decision on briefs, which were submitted to the court, more or less as scheduled, by April 5, 1995.

It should also be noted that defendant Jeffco raises these same legal issues by way of its new matter, which is not before this court.

## DISCUSSION

### 1. *There Is No Express Agreement To Arbitrate Contained in the Subcontracts Between Plaintiff and Defendant Jeffco*

The six page subcontract attached to Hartford's preliminary objections as exhibit A is dated July 10, 1991 and involves the Cranberry Wal-Mart Store, no. 1770.

Paragraph 26 of that subcontract is entitled "settlement of disputes." It refers to Jeffco's right to compel plaintiff's performance in a court of equity and fails to specify or require any form of arbitration. Hartford agrees that there is no contract to arbitrate this dispute because it does not incorporate by reference any arbitration clause in someone else's contract. However, Hartford suggests that judicial economy would require arbitration of this claim along with the others, despite the absence of any agreement to arbitrate.

Similarly, Hartford concedes that the subcontract attached to the preliminary objections as exhibit B does not require arbitration, but still requests that the court order it for reasons of judicial economy.

However, Hartford maintains that the subcontracts attached to its preliminary objections as exhibit C and exhibit D do call for arbitration. These contracts have the same "settlement of disputes" paragraph as are in the aforesaid exhibits A and B. The paragraph is as follows:

*"Settlement of disputes*

"(28) Notwithstanding any of the other provisions of the contract, subcontractor shall continue diligently and uninterruptedly to perform the work and/or supply the material required by him under this contract until completion thereof.

"Jeffco Construction Company shall also have the right to apply a court of equity to compel performance on the part of the subcontractor of the latter's obligations under this contract. Jeffco Construction Company shall also have the right to obtain another person or firm to perform and complete the obligations required from the subcontractor under this contract, and in such case

the subcontractor shall be liable for and pay Jeffco Construction Company the excess costs and expenses so incurred by Jeffco Construction Company over and above the contract price herein.

"The rights available to Jeffco Construction Company for subcontractor's failure to comply with any of the terms of this contract are cumulative, and any one or all of such rights may be exercised at the option of Jeffco Construction Company. Failure at any time of Jeffco Construction Company to enforce any one or more of the rights available to him shall not be deemed as a waiver of such rights or of any default of the subcontractor. On the other hand, the exercise by Jeffco Construction Company of any of the rights available to him shall not constitute a waiver by him of the other rights available to him."

Hartford would have the court ignore the part of Jeffco's actual subcontract with plaintiff that purports to deal with the *"settlement of disputes"* in favor of an obscure and contorted interpretation of so-called incorporation clause found under the heading *"special conditions and/or exceptions"* which follows the first section of the subcontract, *"scope of work."*

The section of exhibit C called *"special conditions and/or exceptions"* requires the following for the project named "West Hills OTB:"

"(3) Samples, drawings and/or shop drawings to be submitted to Jeffco Construction Company for approval within 10 days of contract date prior to purchase of material.

"(a) A list of major material manufacturers and suppliers for various component items proposed for use on this project must be submitted prior to ordering with shop drawings and/or supplies.

"(b) Contract documents, not attached hereto are part of this contract and incorporated herein by reference. They can be viewed upon request by subcontractor.

"(c) Subcontract completion date: per project schedule

"(d) Project completion date: November 20, 1992

"(e) It is further understood and agreed that subcontractor shall have the responsibility to review all of the plans which become part of the obligations of the subcontractor hereunder.

"(f) Other: *Exhibits 'A' and 'B' attached are hereby made part of this agreement."* (emphasis in original)

*"Subcontractor agrees that it shall be bound to Jeffco Construction Company to the same extent as Jeffco Construction Company is bound to the owner and that any and all terms and/or obligations in any agreement(s) between owner and Jeffco Construction Company are incorporated herein."* (emphasis added)

"Subcontractor shall at all times supply a sufficient number of skilled workers to perform the work covered by this subcontract with promptness and diligence. Should any workers performing work covered by this subcontract engage in a strike or other work stoppage or cease to work due to picketing or a labor dispute of any kind, Jeffco Construction Company may, at its option and without prejudice to any other remedies it may have, after a 48 hours written notice to subcontractor, provide any such labor and deduct the cost thereof from any monies then due or thereafter to become due subcontractor."

There is nothing in this "incorporation" clause to suggest that it also incorporates a different mechanism for the settlement of disputes than that expressly called for in paragraph 28 of exhibit C and exhibit D. Even

less does the quoted "incorporation clause" suggest that plaintiff is bound by "Article 4.5 of the 1987 edition of AIA document A201, general conditions of the contract for construction." The Pennsylvania Supreme Court, while encouraging arbitration, has observed that arbitration must be unambiguously agreed to:

"By now it has become well established that '[s]ettlement of disputes by arbitration are [sic] no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested, arbitration is favored by the courts.' When one party to an agreement to arbitrate seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to the questions of whether an agreement to arbitrate was entered into and whether the dispute involved falls within the scope of the arbitration provision. Thus a party who can establish that he did not agree to arbitrate, or that the agreement to arbitrate, limited in scope, did not embrace the disputes in issue, may be entitled to enjoin an arbitration proceeding." *Flightways Corporation v. Keystone Helicopter Corporation,* 459 Pa. 660, 662-63, 331 A.2d 184, 185 (1975). (citations omitted)

The instant subcontracts contain no agreement to arbitrate which is binding on plaintiff. The preliminary objections based on this contention must be overruled.

### 2. The "Bad Faith Insurance Statute" 42 Pa.C.S. §8371 Does Not Apply to Surety Bonds

There are no reported Pennsylvania cases which have decided whether or not section 8371 (quoted at the beginning of this memorandum) applies to a surety. Section 8371 requires that the "action aris[e] under an insurance policy." The first question is how has the legislature defined "insurance policy?" For example,

is there anything in Pennsylvania insurance law which includes "surety bonds" within the definition of "insurance policy?" Are "sureties" regulated differently from "insurers?"

It seems well settled that a surety's liability derives from and is limited by the principal's liability. It is also well settled that payment on a surety bond is a matter of contract and the surety is generally not liable for amounts in excess of the bond.

Insurers and sureties are both regulated by the insurance laws of Pennsylvania found in Title 40 of Purdons' Pennsylvania Statute. Suretyships are expressly covered by section 831 and by section 1181 et seq. Section 1184(e), while not relevant to the issue here, is helpful in discerning that there is indeed a legislative distinction made between what it there calls a "surety or a guaranty bond" and what it calls "a contract or a policy covering any risk or kind of insurance." Therefore, it seems that the legislature, believing these items to be different, intentionally limited the bad faith provision of section 8371 to insurance policies only. If the legislature wanted a surety bond to be subject to bad faith sanctions, they would have included those words.

Regarding the propriety of judicial imposition of damages in tort for the alleged "bad faith" delay in paying the bond, the court finds the reasoning of the Maryland Court of Special Appeals persuasive. In *Republic Insurance Co. v. Board of County Commissioners,* 68 Md. App. 428, 511 A.2d 1136 (1986), the Maryland court was faced with a similar issue, whether an action is recognized whereby an obligee may recover from a surety for the surety's "bad faith." The Maryland court points out that a bond is usually a simple contract to which principles of contract law apply, including

contract law with respect to damages. In Maryland, as here, there appears to have been no statute imposing bad faith damages *on a surety.* The Maryland court explains why the judiciary should not recognize damages in tort for a breach of a bond or of any other form of contract:

"[2] Maryland does not recognize failure to perform a contract as giving rise to a tort action for 'bad faith.' Indeed, if the county were successful in its attempt, practically every breach of contract would give rise to an action in tort for 'bad faith.' Every breach of contract could, and probably would, result in claims in both contract and tort. The 'bad faith' allegation would likely become a 'boiler plate' averment in every suit for breach of contract.

"We refuse to employ some supposed 'public policy' argument which would obfuscate the distinction between contract and tort by intertwining one with the other. Instead, we hold that a breach of contract does not, under the circumstances of this case, give rise to a tort action for 'bad faith.' " *Id.* 511 A.2d at 1138.

The demurrer to Count II must be sustained.

See order filed herewith.

## ORDER

And now, April 13, 1995, it is hereby ordered that defendant Hartford Fire Insurance's preliminary objection in the nature of a motion for dismissal of plaintiff's complaint based upon agreement to arbitrate is overruled, and it is further ordered that its demurrers to Count II and Count III of plaintiff's complaint are sustained, and those counts are hereby dismissed with prejudice.